## RUSSELL v. SOUTHWESTERN COTTON OIL CO.

No. 20987. Opinion Filed June 21, 1932.

Blanton, Osborn & Curtis, for plaintiff in error.

Abernathy & Howell, for defendant in error.

KORNEGAY, J. This action was begun in the district court of Garvin county on September 14, 1927, by the defendant in error, to recover $1,280.70, deficiency assessment of income tax due the United States by the corporation, in excess of the amount represented by the defendant to be due when plaintiff purchased 724 shares of the capital stock of Planters Gin Company of Pauls Valley on May 22, 1922. There was an allegation that on October 30, 1925, defendant promised to pay this to plaintiff and had failed to do so. Prayer was for recovery of the amount and 6 per cent. interest from October 30, 1925.

A motion to make more definite was sustained. An amended petition was filed, stating that the purchase was made in the name of J. P. Maples for plaintiff, who furnished the money, and that plaintiff's assistant manager, Horace Hayden, Jr., handled it. That the representation was made orally and in writing, and:

"(3) That on the 30th day of October, 1925, an examination of the books and records of the Planters Gin Company by the United States internal revenue agent disclosed that an additional indebtedness or tax due by the Planters Gin Company, in the sum of $1,286.76, and said tax was for the fiscal year ending July 31, 1920, of said Planters Gin Company, being for a period prior to the date of the purchase by the

plaintiff of the said stock; that the defendant Hardee Russell conferred in connection with the plaintiff, with the revenue agents, and agreed that the said indebtedness was correct, and on or about October 30, 1925, signed, with the Planters Gin Company, an agreement consenting to assessment of said $1,286.76. A copy of said agreement is hereto attached, marked Exhibit 'B', and made a part hereof.

"(4) That on October 30, 1925, the defendant Hardee Russell orally promised and agreed to pay to the plaintiff the sum of $1,286.76, the amount of said indebtedness so found due; and relying upon the promise and agreement so made by the said Hardee Russell that he would pay the plaintiff, the plaintiff paid to the United States government the said tax in the amount of $1,286.76; that thereafterwards, at various times, at Oklahoma City, Okla., and in Pauls Valley, Okla., the said defendant promised and agreed to pay said amount to the plaintiff, and on March 23, 1926, in response to a letter from the plaintiff demanding payment, the defendant wrote a letter to the plaintiff promising and agreeing to pay said amount; a copy of said letter is hereto attached, marked Exhibit 'C', and made a part hereof; that regardless of said oral agreements and said promise in writing, the defendant has failed and neglected to pay said amount.

"Wherefore, plaintiff prays judgment against the defendant for the sum of $1,286.76, with interest at six (6) per cent. from October 30, 1925, and all costs and for all other and further proper relief."

Exhibits "A", "B", and "C" are as follows:

"Exhibit 'A'

"May 22, 1922.

"Received of J. P. Maples check for $6,430 in full payment for 724 shares of capital stock of the Planters Gin Company, a corporation, of Pauls Valley, Okla. It is understood that there is only 1,282 shares of stock outstanding, and that the stock book has been ordered closed so that no more shares can be issued except on authority of the stock hereby purchased. The only indebtedness against the company is for one installment of federal income tax, amounting to $292.92: that the bank balance at this time is $856.94, and that there are 640 patterns of bagging and ties on hand. Said stock certificates to be issued to said J. P. Maples and mailed to him within three days.

"(Signed) Hardee Russell."

"Exhibit 'B'

"Agreement consenting to assessment of a deficiency.

"The undersigned taxpayer hereby waives the right of appeal under section 274 (a) of the Revenue Act of 1924 with respect to the items listed below, and consents to the immediate assessment of the deficiency in tax resulting therefrom. These items are included in a deficiency in tax aggregating $1,286.76, as indicated in the report of the revenue agent in charge at Oklahoma City, Okla., dated October 30, 1925.

"We hereby waive claim for refund in the amount of $1,517.71 covering the fiscal year 1920.

"(Attach additional sheets if necessary)
"Planters Gin Company
"Per Horace Hayden, Jr., Treas.
"Hardee Russell
"J. T. Blanton.
"Address: Pauls Valley, Okla.
"Date Oct. 30, 1925.

"'Where the taxpayer consents to the assessment of the entire amount of the deficiency shown by the letter from the Commissioner or as indicated in the report of the revenue agent in charge, the items need not be listed; reference may be made to the letter or report.'

"Note: This agreement is subject to the approval of the Commissioner and is not an agreement as provided under section 1006, Revenue Act of 1924."

"Exhibit 'C'.

"Hardee Russell
"Dry Goods
"Gents' Furnishings.
"Pauls Valley, Okla.
"3/23/26

"Mr. Herbert Hayden,
"Oklahoma City, Okla.

"Friend Hayden:

"I received your letter in due time, and should have answered you sooner, but thought each day I surely would get to have a short conference with Blanton, but he has been so tied up in court and the ousting of the county commissioners that I have been unable to get to talk with him. I have phoned him two or three times and he has said each time that we would just have to get together in a few days and attend to that matter. I was never so short on money in my life, but guess I can borrow enough to pay off and will try and see Blanton and attend to it without many more days' delay.

"Yours truly,
"(Signed) Hardee Russell."

A demurrer was interposed and overruled. An answer was filed as follows:

"Now comes the defendant, Hardee Russell, and answering plaintiff's petition filed herein, denied each and every allegation and statement of fact therein made or contained.

"Further answering, this defendant further alleges that the plaintiff's alleged cause

of action, if any, is barred by the five years' statute of limitation of the state of Oklahoma, in that plaintiff's cause of action, if any, arose and accrued more than five years prior to the bringing of this action.

"Further answering this defendant alleges that plaintiff's cause of action, if any, is barred by the three years' statute of limitation of the state of Oklahoma, in that said cause of action, if any, arose and accrued more than three years prior to the bringing of this action.

"Wherefore, having fully answered, this defendant prays that plaintiff take nothing by reason of this cause of action, and that he be discharged with his costs.

"Blanton, Osborn & Curtis,
"Attorneys for Defendant."

"State of Oklahoma, County of Garvin, ss.

"Hardee Russell, being first duly sworn, states that he is defendant above named; that he has read the above and foregoing answer, and knows the contents thereof, and that the same are true and correct, as he verily believes.

"Hardee Russell.

"Subscribed and sworn to before me this 4th day of January, 1929."

"Lottie Hill, Notary Public."

A jury was impaneled to try the cause. In one aspect there was some conflict in the evidence, but on the whole case there was little conflict. J. D. Carleton, the representative of the United States on income tax collection, after some preliminaries, testified as follows:

"Q. Now, Mr. Carleton, I am not asking you anything with reference to any of the internal revenue propositions; I am asking you whether or not you heard a conversation between Mr. Russell and Mr. Hayden as to the payment of any amount at that time by Mr. Russell, and, if so, state to the court and jury the conversation. A. Well, I can't give the exact conversation that I heard. There was a discussion of the matter and Mr. Russell stated that he would pay it. Q. Was that the substance of the conversation as near as you remember it? A. That was the substance of the conversation, yes, sir."

On cross-examination he testified as follows:

"Q. What did Mr. Hayden say to him when he says, 'I will pay it?' A. If Mr. Hayden said anything, I don't remember it. Q. Well, what provoked him into saying, 'I will pay it?' A. Well, there was a general discussion, as I remember, about who was going to pay it, but frankly the details of all that conversation, I don't remember. Q. Wasn't it discussed there that you said that it would be sometime and we would

have plenty of time to come down here and hold the meeting; that you would just send it in, and they would send you back the amount, and you would submit it to the company and notify them then, and we would have plenty of time to hold the meeting and see if we could not get the money, or something to that effect, and didn't you join in it? A. I don't want to testify what I said as a revenue agent as to that, but the general practice of the revenue department is to send reports in and after they are audited and verified, they bill the company—or bill the taxpayer for that item, and I don't usually—you can probably realize the fact that I work several hundred propositions, and have since that time and that these details, I believe I am frank to tell you that I cannot remember the conversation."

On the trial it was contended by the defendant that a man by the name of W. L. Menefee was the seller of the stock and Hayden was not, and the following is found in Menefee's testimony:

"Q. What was said, if anything, about the money, or about this receipt when it was signed by Mr. Russell, or particularly that part of it which refers to the $6,430, if anything? Mr. Howell: Objected to as an attempt to change a written instrument that is not ambiguous and speaks for itself. Which objection is by the court overruled, to which action of the court the plaintiff excepts and which exception is by the court allowed. A. Mr. Russell told Mr. Maples that he was not receiving this money. Well, Mr. Maples says, 'That is all right;' he says: 'It is all in the same transaction anyway, and you go ahead and sign the receipt for all of it.'"

The manager of plaintiff testified, and also the defendant. The income tax return was introduced, signed by the defendant and verified by the president, the plaintiff in error, and the secretary, J. T. Blanton, and showed net income $9,373.70. It was verified September 1, 1920. The audit of the books was dated August 21, 1920, and showed net earnings of $19,347.80. In the opening statement of counsel. we find the following:

"Now, Mr. Hardee Russell did not know that there was any income tax going to be dug up, so it went along until 1925. Now, this was in 1922. In 1925 the proof will show that the United States internal revenue man, in checking over all the income tax returns, discovered a discrepancy, as claimed, and it was demonstrated that there was an additional amount due of $1,200 as income for the year 1920, owed not by the individual stockholders, but owed by the corporation of the Planters Gin Company.

"Now, the proof will show that Barton

Lee always each year at the end of the year audited the accounts and books of the company and made their income return, as he was supposed to be schooled in that business. He made this income return and nobody knew there was any error about it. The discrepancy, I think, came in the amount of allowances for things and for things that were disallowed—first errors as to the amount of deduction, and so it developed that there was $1,200—or some odd dollars of that income tax due. That was just about $1 a share. In other words, if I had 60 shares I would own $60, and Hardee Russell $180, and the farmers in the same proportion to the amount of stock.

"Well, the proof will show that they called Mr. Russell and myself to Oklahoma City, and I went up there with him, and we then went over it with the federal agent, and we had Barton Lee's figures. It was found somewhere, he said, and Mr. Lee—we had discussed it with Mr. Lee, and we had learned of the situation, so the man demonstrated that there was that amount due, and Mr. Russell and I signed an agreement that it ought to be assessed—should be assessed and ought to be paid—that there was no escape from it."

Instructions were asked for by defendant below, as follows:

"1. You are instructed to return a verdict in favor of the defendant and against the plaintiff.

"2. You are instructed, gentlemen of the jury, that if you find by a fair preponderance of the evidence in this case that at or about the time the additional income taxes of $1,286.76 was assessed against the Planters Gin Company, the defendant, Hardee Russell verbally agreed with the plaintiff to pay said sum himself, then you will return a verdict in favor of the plaintiff against the defendant, but unless you so find you should return a verdict in favor of the defendant.

"3. You are further instructed that in the event you find for the plaintiff and against the defendant, in determining the amount due by the defendant to the plaintiff, you will take such part or portion of the $1,286.76 as the number of shares purchased by the plaintiff of Hardee Russell bears to the whole number of shares of stock of said corporation, then outstanding, and not the full amount of $1,286.76."

All of these instructions were refused and exceptions taken. The defendant excepted to the instructions the court gave, and argues here against them, as follows:

"1. You are instructed, gentlemen of the jury, that if you find by a fair preponderance of the evidence in this case. that at or about the time the additional income taxes of $1,286.76 was assessed against the Planters Gin Company, the defendant Hardee Russell verbally agreed with the plaintiff to pay said sum himself, then you will return a verdict in favor of the plaintiff and against the defendant, but unless you so find you should return a verdict in favor of the defendant.

"2. If you find from a preponderance of the evidence that the defendant sold or purported to sell to the plaintiff 724 shares of stock of the Planters Gin Company for a consideration of $6,430, and entered into a written receipt acknowledging receipt of the purchase price and representing that there was no indebtedness against said corporation except an installment of the federal income tax in the sum of $292.92, and plaintiff relying on such statement purchased said stock and paid the purchase price therefor, and it later developed that there was another and further obligation against said corporation in the form of income tax in the sum of $1,286.76, which plaintiff was compelled by the government to pay, then and in that event the defendant agreed to pay said amount, then the defendant would be liable to the plaintiff for the amount so paid, and your verdict should be for the plaintiff.

"Unless you do so find from a preponderance of the evidence, then your verdict should be for the defendant.

"3. The defendant having admitted the execution of the receipt introduced in evidence, such receipt will be taken to contain all the terms and conditions of the transaction, such as the amount of stock sold, the price paid, the person making the sale, and the person making the purchase and the representations made; and the burden would be upon the defendant to disprove any of the terms and conditions therein set out, and in the absence of clear and convincing proof to the contrary, the provisions of such receipt should govern.

"4. It is the defendant's contention that he did not own the stock which was purchased by the plaintiff, did not sell the same to the plaintiff, did not receive the purchase price therefor, and that this fact was known to the plaintiff or to J. P. Maples at the time of the transaction, and that said Maples understood that the receipt signed by the defendant did not speak the truth or represent the real facts. In the event that you believe from a preponderance of the evidence that the plaintiff did not purport to sell the stock to the plaintiff or plaintiff's agent, did not receive the money therefor, did not own the stock, or did not represent to own the stock, and that plaintiff or the said Maples knew such to be the case, and simply procured the defendant to sign said receipt for some other purpose and without intending to rely on its recitations, then you should find for the

defendant unless you further find that said defendant did agree to pay said amount."

The jury found for the plaintiff. Under the admitted facts it is difficult to see a nonliability. The president and secretary were presumably cognizant of the audit when the return was verified. Clearly the tax was due; probably considerable penalty could have been exacted. The instructions given were favorable to plaintiff in error. The jury, if doubt there was, resolved it against plaintiff in error. We think that the judgment is just and legal and that the plaintiff in error should recompense the defendant in error for what it was forced to pay, and that the instructions were not prejudicial to his rights, and the jury's verdict was sustained by the evidence, and the case should be affirmed.

It is so ordered.

RILEY, HEFNER, CULLISON, SWINDALL, ANDREWS, and McNEILL, JJ., concur. LESTER, C. J., and CLARK, V. C. J., absent.